EHRLICH, Justice,
concurring in part and dissenting in part.
My dissent is directed to two portions of the proposed rule. I do not believe that trial judges should “take charge of all cases” and should “control the progress of the case thereafter ...”
In my view, the State of Florida has absolutely no interest in a law suit between two or more civil litigants, except to provide a forum and a procedure for fairly adjudicating conflicts between those parties. The parties should control the progress of the litigation. The system has worked admirably without the intercession of the state since the founding of the Republic. I see no reason to have “Big Brother” with a cattle prod goading the parties along in a case that the parties know far more about than the trial judge. I have yet to be given a good solid reason for this significant innovation. I am told that the state does indeed have an interest in civil litigation to make certain that the parties themselves are not shortchanged timewise by their lawyers. I recognize that there are lawyers who will and do put a case on the “back burner” in order to pursue more desirable and perhaps lucrative legal business, and that there are clients who are thus damaged in their legal representation. We are not told how prevalent the practice is, or to what extent, if any, such unlawyer-like activity impedes the progress of those who desire an early resolution of their case. Of course, every court docket contains old cases that seemingly never move to conclusion. I have never been shown that such “old dogs” clog the docket and prevent other litigants who want to get on *427 to trial from achieving that objective. Be that as it may, our Rules, and the inherent power that the trial judge has, can take care of any cases that have really been around too long. In short, there are far less intrusive means for preventing the undue crowding of the court calendar than those contemplated by the new rule.
The one thing that I am certain of is that a great deal of judicial labor, that could otherwise be utilized trying cases, will be expended by trial judges in what is euphemistically called case control further exacerbating the need for additional trial judges. Of equal certainty is the fact that countless and needless hours will be expended by lawyers reporting to trial judges the progress of their case and explaining why their case is not progressing to suit the judicial fancy, and the client for whose benefit the rule is ostensibly being promulgated will be bearing the expense of the reporting sessions, because the lawyer must still charge for his time.
Of critical importance to me as a former trial lawyer, and now as a jurist, is the length of time it takes to get a case on the trial calendar after the parties have asked to set it for trial. That, in my opinion, is the true test of how current the caseload of a trial judge is. If a litigant can get on the trial calendar within three to six months of a request to do so, then that trial docket is in good shape, and I care not, and properly so, how long other cases have been pending in that trial division. If it takes longer than six months to have a trial request honored, then I say that that particular docket is retrogressive, irrespective of whether it is meeting the eighteen month disposition schedule, and needs to be scrutinized to determine if the problem is the work habits of the trial judge, or perhaps better stated, his lack of work habits, or his undue caseload. We have not been shown that statewide it is not possible to get a trial date within six months after requesting one.
Finally, my dissent is directed to the time standards of civil litigation. I think that these time standards should be directory rather than mandatory. At the trial level I have not been shown that there is a direct relationship between the proposed time standards and how long it takes to get a case docketed after it has been noticed for trial, and that if we do not have such time standards, that the length of time it takes to get a case on the trial docket after being noticed therefor will be lengthened beyond the six month figure that I have suggested as reasonable.
At the appellate level, I am apprehensive that some judges may well sacrifice quality of work to conform to the six months schedule. Peer pressure is a thing of reality. How easy it may be for a judge to recommend a per curiam affirmed, rather than take the time to author a well-deserved opinion, in order to stay within the time standards. I cannot subscribe to the premise that the time within which it takes to get an opinion published is more important than the decision itself and the judicial scholarship of the written opinion. Chances are judges will not succumb to the easy way of conforming to the time standards, but the temptation is there. The motto on the great seal of this Court is Sat Cito Si Recte which translates, I am told, to “soon enough if correct.” That motto is timeless and still rings true.
In registering my dissent, I do not intend to belittle or demean the good motives or the earnest and sincere efforts of those who have worked long and hard on the various committees to come up with what they perceive to be a solution to the eternal problem of court delay. Their effort may well turn out to be a little or a giant step in the proper direction. While I salute their good intentions and will of course lend my every effort to a suitable working of the rule, I do not, at this point, believe it is the panacea that many of its vocal proponents proclaim it to be.
I would be less than honest and candid if I did not recognize that there are trial and appellate judges who do not bear their fair share of the judicial labors. Unfortunately, these few seem to stand out in the public view and tarnish the public image of *428 the overwhelming majority of the judiciary who labor long and hard in the judicial vineyard, and at salaries totally incommensurate with their skills and responsibilities, because of their love of the law and because they believe with their heart and soul in the rule of law and know and appreciate all too well the great responsibilities of the members of the third branch of government. Those few who do so much harm to the public standing of so many can, and should be appropriately dealt with, and there are present means to do so, but let us admit that they alone do not account for all of the so-called delays in the judicial process. As long as our state is growing with new people, new businesses and new relationships, the teachings of history leads me to the belief that there will always be a hiatus between the manpower and material needs of the judiciary and what the legislative branch of government is willing to recognize and provide. We shall continue to have judicial delays in our state as long as it continues to grow, because the state needs and will need more judges than the legislature is willing to provide. There will never be a proper balancing of the judicial needs, in my view, so long as the state grows and the people continue to become increasingly cognizant of and assertive of their rights under the law.
All of this discussion leads me full circle to the view that the proposed rule may well be in the long haul counter-productive. This is one occasion where I sincerely hope that I am in error.
SHAW, J., concurs.